[No. 4006.    Decided March 10, 1902.]

CITY OF NORTHPORT, *Respondent,* v. NORTHPORT TOWN-
SITE COMPANY, *Appellant.*

CONTRACTS — AGAINST PUBLIC POLICY — INTEREST OF OFFICER IN CITY CONTRACT.

The interest of a councilman in a contract entered into by the city for the improvement of a street is established when it appears that such councilman was at the time a large stockholder and business manager of a lumber company, and that as such business manager he sold to the contractor the material to construct the improvement under an agreement to receive the improvement warrants in payment therefor.

SAME — ENFORCEMENT OF ASSESSMENT FOR STREET IMPROVEMENT — ESTOPPEL — VALIDITY OF CONTRACT.

The fact that a property owner stood by and allowed the city to improve a street upon which his property abutted, without raising any objection to the letting of the contract or the levy of the assessment would not estop him in an action to enforce the assessment from setting up the illegality of the contract by reason of the interest of a member of the city council therein, since, under Bal. Code, § 968, which forbids city officers from being interested in city contracts, and provides that "any claim for compensation for work done, or supplies or materials furnished, in which any such officer is interested, shall be void, and, if audited and allowed, shall not be paid by the treasurer," such contract is shorn of all equitable features, and the duty imposed on the court of declaring the contract void, whenever its illegality appears from the evidence.

SAME — RULE APPLICABLE TO STOCKHOLDER.

The interest of a stockholder of a corporation in corporate contracts brings such stockholder within the reason of the rule

prohibiting a city officer from being interested as an individual in the city's business.

Appeal from Superior Court, Stevens County.—Hon. WILLIAM E. RICHARDSON, Judge. Reversed.

C. S. Voorhees, Reese H. Voorhees and D. H. Carey, for appellant.

J. C. Harkness and J. A. Kellogg, for respondent.

The opinion of the court was delivered by

REAVIS, C. J.—Suit by plaintiff city to enforce a local assessment lien levied for sidewalk improvements along certain streets in the city of Northport. The local assessments seem to have been duly levied for the improvements made, and upon the abutting property owned by the defendant. The complaint sets out the facts showing the regularity of the proceedings and the validity of the assessment, and demands the foreclosure of the assessment lien. The answer does not deny the regularity of the assessment, but, for defense, alleges that a member of the city council (W. S. Rose) was interested in the contract for the improvement made between the city and the contractor, A. K. Ogilvie. Judgment was for the plaintiff.

The court, among other things, found that there was no agreement or understanding existing between the said A. K. Ogilvie, when the contract for the improvements hereinbefore set forth was awarded by the city council of plaintiff city, and W. S. Rose, that the profits arising from said contract should be divided between the said Ogilvie and the said Rose, and, further, that there was no agreement or understanding between the said Ogilvie and the said Rose whereby the said Rose was or became interested, directly or indirectly, in the contract entered into between

plaintiff city herein and the said A. K. Ogilvie, and that there was no agreement or understanding between the said A. K. Ogilvie and the said W. S. Rose that, in the event of the contract hereinbefore referred to being awarded to the said A. K. Ogilvie, the said Ogilvie should purchase the lumber to be used in the work done under said contract from the Crown Lumber Company. These findings were excepted to by defendant. The court found, in substance, that there was but one bid made for the construction of the improvements, and but one bid considered before the council, and that Ogilvie was the only bidder; that it was provided in the contract for the payment of Ogilvie that he should accept city warrants in payment for the work; that the council consisted of seven members, one of whom was W. S. Rose; that there were only four members present when the contract was awarded, and that Rose, as one of the four, voted to accept the bid and let the contract to Ogilvie, and that the improvements were made under said contract; that at the time the bid was accepted, and the contract let under which the improvements were made, said W. S. Rose, a member of the council, was the manager of the Crown Lumber Company, a corporation engaged in the lumber business in the city of Northport, and was also a stockholder in such corporation to the extent of 1,600 shares out of a total capital stock of 10,000 shares, and that he was such manager and stockholder for at least four months prior to the execution of the contract with Ogilvie; that there were only two other stockholders in said corporation, and that the three stockholders of the company, including Rose, were desirous of supplying the lumber necessary to be used in making the improvement; that the stockholders, including Rose, met together frequently to discuss the sale of lumber by the corporation to be used in

the improvements, and said Rose, as manager of the corporation, did sell for the company to Ogilvie, all of the lumber needed for and used in the making of the improvements at a price of $11.60 per thousand feet, being in the aggregate $2,180.26; that said Rose, as manager of the corporation,. agreed to and did receive in payment for said lumber from Ogilvie the warrants of the city of Northport issued under the contract for improvements, and received by Ogilvie in payment for said improvements; that the Crown Lumber Company was the only dealer located in the city engaged in the sale of lumber at and prior to the time the contract was executed; that, prior to the bidding for the construction of the improvement, Ogilvie and Rose had at least two conversations relative to the sale of the lumber needed to be used in the improvements, and it was understood and agreed that the Crown Lumber Company would sell lumber to Ogilvie for said improvement in the event Ogilvie's bid should be accepted, and that the lumber company would accept warrants of the plaintiff city from Ogilvie in payment for the lumber, and it was further agreed between Rose and Ogilvie, prior to the bid made by Ogilvie, that the price at which the company should sell the lumber of Ogilvie was $11.60 per thousand, as required for said improvements; that, at the time of the allowance of the claim to Ogilvie for the construction of the improvements under his contract with the plaintiff city, W. S. Rose was still manager of the Crown Lumber Company, and a stockholder therein, as before mentioned, and was a member of the council of the plaintiff city. Section 968, Bal. Code, relating to municipal contracts, is as follows:

·  "No officer of such city shall be interested, directly or indirectly, in any contract with such city, or with any of

the officers thereof, in their official capacity, or in doing any work or furnishing any supplies for the use of such city or its officers in their official capacity; and any claim for compensation for work done, or supplies or materials furnished, in which any such officer is interested, shall be void, and if audited and allowed, shall not be paid by the treasurer. Any wilful violation of the provisions of this section shall be a ground for removal from office, and shall be deemed a misdemeanor, and punished as such."

In view of the issue presented by the defense as stated in the answer, it is not material to specially review the findings of fact excepted to by the defendant. The evidence has been examined, and we are satisfied that the findings of fact made by the superior court negativing any interest of councilman Rose in the contract for the local improvement cannot be approved. The salient fact mentioned, and found by the court, that Rose, while a member of the city council, was also a large stockholder and was business manager of the Crown Lumber Company, and that as such business manager he sold to Ogilvie, the contractor, the material to construct the improvement under the contract, and made the agreement to receive the improvement warrants in payment therefor, is sufficient to establish the fact that the councilman was interested in the contract, and the evidence in the record amply sustains such conclusion.

It is urged by counsel for respondent that defendant ought not to be permitted to urge this as a defense to the payment of the sum justly charged against its property for the improvement, especially as it did not at any time object to the contract, or to the proceedings for the assessment and the issuance of the warrants in payment for the improvement; that, in equity, defendant should now be estopped from showing the illegality of the contract; that, remaining passive until the property was improved, defendant

should not now be allowed to relieve itself from the payment for benefits received by it. A number of authorities are submitted by counsel to support this view of the case. Among them are *Grand Island Gas Co. v. West,* 28 Neb. 852 (45 N. W. 242); *Currie v. School District,* 35 Minn. 163 (27 N. W. 922); *Pickett v. School District,* 25 Wis. 551 (3 Am. Rep. 105); *Lucas County v. Hunt,* 5 Ohio St. 488 (67 Am. Dec. 303); *Argenti v. San Francisco,* 16 Cal. 256; *Call Pub. Co. v. Lincoln,* 29 Neb. 149 (45 N. W. 245); *Mayor, etc., v. Huff,* 60 Ga. 221. In the Nebraska cases mentioned, the interpretation seems to have been given to the statute of that state which was before the court, that contracts in which a public officer was interested were not absolutely prohibited, but were left optional for the municipality to affirm or repudiate at its pleasure, and that, if affirmed, and property or things of value were received under the contract, and retained for the benefit of the municipality, reasonable compensation should be made therefor. In the Wisconsin case no statutory prohibition against such contracts is mentioned. The reasons stated in most of the opinions in the cases mentioned are founded upon the construction of the rule of public policy involved. The general public policy upon which the statute (§ 968, Bal. Code) is founded is of ancient origin, and has been inexorably enforced by the courts throughout the history of the common law. It is that principle which requires the trustee to always occupy a position that shall be free from the dictates of any interest that may conflict with the obligations of his trust. It is said by Judge DILLON (1 Dillon, Municipal Corporations [4th ed.] § 444):

"The principle generally applicable to all officers and directors of a corporation is that they cannot enter into

contracts with such corporation to do any work for it, nor can they subsequently derive any benefit personally from such contract."

See, also, *Michoud v. Girod,* 4 How. 503, and *Marsh v. Whitmore,* 21 Wall. 178. Our statute declares this policy, and, in plain terms, absolutely prohibits such contract. The statute is plainly punitive. It declares such contract void, not merely voidable, and further declares that any claim for compensation for work done or supplies and materials furnished shall be void, and that, even if audited and allowed, it shall not be paid. The statute seems to have shorn such a contract of all equitable considerations, when it declares that compensation shall not be *paid* by the treasurer. It is, then, not a question of any right of the defendant to challenge the validity of the contract; but, under the statute, the duty is imposed upon the court, at its own instance, when the facts appear, to inquire into the legality of the contract, and, if it falls within the inhibition, to declare it void.

Long experience has taught law makers and courts the innumerable and insidious evasions of this salutary principle that can be made, and therefore the statute denounces such a contract if a city officer shall be interested not only directly, but indirectly. However devious and winding the chain may be which connects the officer with the forbidden contract, if it can be followed and the connection made, the contract is void. It would seem that the interest of a stockholder of a corporation brings such stockholder within the reason of the rule prohibiting an officer from being interested in the city's business. *San Diego v. San Diego & L. A. R. R. Co.,* 44 Cal. 106; 1 Greenleaf, Evidence (14th ed.), § 333; Mechem, Public Officers, 839; *Currie v. School District, supra; People v. Township Board,* 11 Mich. 227.

But what was the interest of the councilman in the case at bar? His company was to furnish the material to construct the improvements. This arrangement was virtually made before the contract was let. The councilman was a stockholder and the manager of the lumber company. He received his proportion of the profits of the purchase price of the material sold to the contractor, and, further, he took his pay in these improvement warrants. It is not necessary to further pursue the discussion of his interest than to observe that he was a party beneficially claiming the payment of the warrants. It is not to be supposed that he would have been unaffected as a member of the council when the validity and amount of the claims for the construction of the improvement were submitted to the council for approval. In fine, the councilman was placed in an attitude where his personal interests might conflict with his fiduciary relations. This attitude, as has been observed, the law prohibits, and the penalty is visited upon all connected with the transaction. A very pertinent and well-considered decision is that of *Hunnings v. Williamson,* 11 Q. B. Div. 533. There the defendant's brother entered into a contract to do work for a vestry, when the brother, being in need of funds to carry out the contract, borrowed money from the defendant, and, by way of security, assigned the benefit of the contract to him. The defendant was at the time a member of the vestry. To the objection that the defendant was not interested in the contract, the court answered:

"A third objection urged was that there was no sufficient evidence, that the defendant was 'interested' in a contract made with the vestry. Under s. 54, in order to render the defendant liable, he must have been 'concerned or interested in' some 'contract or work made with or executed for such . . . vestry.' In the present case

we have to consider whether the defendant was interested
in a contract within the meaning of s. 54. It has been
contended that as the defendant merely lent money to his
brother in order to enable him to carry out the contract,
and merely took an assignment of it by way of security for
repayment of his loan, he was not 'interested' in the con-
tract; but surely it was much to the defendant's 'interest'
to promote the fulfillment of the contract, in order that he
might obtain repayment of the money which he had ad-
vanced. I think that the defendant was 'interested' in the
contract within the meaning of s. 54."

The judgment is reversed, with directions to the superior
court to enter judgment for the defendant.

DUNBAR, WHITE, HADLEY, ANDERS and MOUNT, JJ.,
concur.