[No. 8055.  Department One.  October 11, 1909.]

SHAW & HODGINS, *Respondents*, v. C. W. WALDRON,
*Appellant*.[1]

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—REASSESSMENTS
—LIMITATION OF ACTIONS. An action by a holder of a warrant against
a special improvement fund to compel a reassessment cannot be
maintained when the landowner could plead the statute of limita-
tions against the reassessment.

SAME—PRESUMPTIONS. Where the record does not show the ex-
act date when an assessment became delinquent, it will be presumed
that an action to compel a reassessment was commenced within the
period limited by the statute of limitations, when the defense of the
statute was not interposed and a reassessment was ordered.

SAME — SUSPENSION OF STATUTE — JUDGMENTS — RES JUDICATA—
PARTIES BOUND. An action begun by a holder of a warrant against
a special fund to compel a reassessment, he having no other remedy,
in which the city defends for the benefit of the landowners, arrests
the running of the statute of limitations against the right to levy a
reassessment, and is equivalent in law to a valid assessment, and
is binding on the landowners.

MUNICIPAL CORPORATIONS — CONTRACTS—OFFICER INTERESTED—EF-
FECT—SPECIAL ASSESSMENTS—DEFENSES. The purchase of supplies
by a contractor for city work, from the mayor, only avoids his con-
tract with the city *pro tanto*, under Bal. Code, § 968, providing that
any claim for supplies furnished, "in which any such officer is in-
terested," shall be void and that the officer shall forfeit his office;
and does not bar an action by the contractor as holder of a warrant
against a special fund to compel a reassessment to provide the fund.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for Snoho-
mish county, Black, J., entered March 20, 1909, in favor of
the plaintiffs upon stipulated facts, after a trial before the
court without a jury, in an action to restrain a city in the
collection of an assessment and from paying warrants issued
in payment of a local improvement.  Reversed.

[1]Reported in 104 Pac. 272.

*Kerr & McCord, Frank D. Nash,* and *Merrick & Mills,* for appellant.

*Brownell & Coleman* and *Robert McMurchie,* for respondents.

CHADWICK, J.—In the year 1890, the city of Snohomish adopted ordinances creating improvement districts, made improvements, and issued warrants to cover the cost. In 1891 a special assessment was made upon the lands abutting on the streets which had been improved. In 1894 this assessment was adjudged by the court to be void; whereupon the city made another assessment which was also declared to be void. Thereafter, and from time to time, appellant Waldron, who was the holder of most of the warrants, urged and demanded of the city council that they make a reassessment upon the property benefited. This might have been done under the act of 1895, p. 142, chap. 79, but no action was ever taken by the city authorities.

In 1901 Waldron instituted a proceeding in the superior court for Snohomish county, against the mayor and councilmen of the city of Snohomish, to compel a reassessment. This proceeding was defended by the city and, being brought on for trial in 1902, was taken under advisement by the court, who so held it until the 7th day of January, 1905, when he issued a writ of mandate compelling the city to proceed with the assessment as prayed for in the petition. Upon appeal (*Waldron v. Snohomish,* 41 Wash. 566, 83 Pac. 1106), this judgment was affirmed, and a reassessment was thereafter made by the city. After due notice given, this assessment was confirmed by the council early in the year 1907. Thereafter respondents and several others brought actions to restrain the city from proceeding further, or in any manner undertaking to collect any part of the assessments, and from paying any of the warrants held by appellant Waldron. A demurrer to the complaint being overruled, defendants answered, defendant Waldron setting up as an affirmative de-

fense the matters to which we have briefly referred, and to all of which a demurrer was sustained. Certain facts were stipulated, after which the court rendered judgment in favor of the plaintiffs, and defendant Waldron has appealed.

There seem to be two grounds upon which respondents rest their case: (1) that the right to levy and collect this special assessment is barred by the statute of limitations; (2) that the original contract is void in that the then mayor of the city did, in violation of the statute (Bal. Code, § 968; P. C. § 3510), contract with and furnish the original contractors with materials and supplies to be used in the prosecution of the work. The record indicates that the first is the only ground considered by the trial court.

This court has held that special assessments are not charges against the general funds of the city. *State ex rel. American etc. Mtg. Co. v. Tanner*, 45 Wash. 348, 88 Pac. 321; where the authorities are collected and discussed; and, also, *Dean v. Walla Walla*, 48 Wash. 75, 92 Pac. 895; *Soule v. Ocosta*, 49 Wash. 518, 95 Pac. 1083; *Jurey v. Seattle*, 50 Wash. 272, 97 Pac. 107. Therefore, if the landowner can plead the statute, this action cannot be maintained under the authority of *Frye v. Mount Vernon*, 42 Wash. 268, 84 Pac. 864, and *Olympia v. Knox*, 49 Wash. 537, 95 Pac. 1090. The exact date upon which the original assessment became delinquent is not made certain in the record, but it is admitted that it was in the year 1891; and, inasmuch as the defense of the statute was not set up in the case of *Waldron v. Snohomish*, we must assume that appellant Waldron instituted that action within the ten-year period of limitations, as provided in the act of 1895. At any rate, under the decision of this court rendered in that case, a peremptory writ issued to compel the reassessment which respondents now seek to defeat.

The remaining question then is, Was the statute of limitations arrested while appellant Waldron pursued his remedy

against the city? It must be borne in mind that Waldron had no remedy against the property owners, and the city no direct interest in the result of the litigation. Waldron brought his action against the only party chargeable in the first instance; he pursued the only remedy he had, and the defense made by the city was for the benefit of the property owners. Had the city won, they would have had the benefit of the improvement with the property discharged of all liens; it lost, and they are bound by the judgment and precluded from asserting any defense that might have been made in the principal action. An action begun within the period of limitation to compel an assessment is equivalent in law to a valid assessment.

In the cases relied on by respondents, no legal assessment was made within ten years after the work was done or the assessment became delinquent on the first attempted levy. In *Frye v. Mount Vernon*, the court said:

"It will thus appear that on December 22, 1904, when respondent, as relator herein, filed his original affidavit asking a writ of mandamus, a period of over thirteen years had expired since the original assessment now claimed to be invalid had become delinquent; . . . No question can arise but that a period of more than ten years has expired not only since the original pretended assessment became delinquent, but also since, as claimed by respondent, it was adjudged to be void. . . . Assume that the town council of Mount Vernon should, of its own motion, make a reassessment to pay these warrants, the original assessment having been delinquent for more than ten years, would it be contended that the owners of property assessed could not plead the statute of limitations when the municipality endeavored to enforce its lien? To say they could not plead the statute would be to hold that the council could delay making a reassessment for any indefinite period of time, and yet hold that whenever any council at a later date might perchance be seized with an inclination or desire to reassess, they could and would be permitted to do so, without regard to lapse of time. We do not think this could be permitted. But if, after the lapse of ten years, the council could not make a

valid reassessment of its own motion, it will not be required to do so by a peremptory writ of mandate."

The necessary implication from this language is that, if the action had been instituted by Frye within the ten-year period of limitation, the decision in that case would have been different, and the city would have been compelled to levy an assessment to pay the improvement warrants. The logical sequence of this reasoning is that, if it be lawful to compel the city to levy an assessment, the courts will not restrain the collection of the tax. The remedy to which the court has said appellant is entitled is not so much the levy of the assessment as its collection; and the rights and liabilities of all parties, including the property owner, who was in law the party charged in the mandamus proceeding, although prosecuted against the city, related back to and are fixed as of the time the action was begun. The mandamus proceeding having been begun within the period of limitation, the property owner must be held to be bound by the acts and defenses made by the city council. Otherwise appellant would be without remedy. We concede the rule to be otherwise where the warrant holder allows the full limit of the statute to run before beginning an action to compel a valid assessment. Upon this principle this case is to be distinguished from the late case of State ex rel. Seymour v. Slater, 53 Wash. 608, 102 Pac. 651.

The following facts were stipulated and, although probably not passed upon by the trial judge, are before us for legal construction:

"It is stipulated that the books of Blackman Bros. show that between October 31, 1890, and December 31, 1890, Joseph Plaskett, the contractor, purchased from Blackman Bros. three bills of lumber aggregating two thousand eighty-eight dollars and ninety cents ($2,088.90), and that said books show that from January 8th to June 12th, 1891, Blackman Bros. credited Plaskett's accounts with the sum of eighteen hundred and fifty-two ($1,852.00) dollars which Mr. Blackman states was paid out by Plaskett to the men

employed in his mill on their wage account upon the order of Blackman Bros., and that Mr. Blackman will also testify that this lumber was sold by his firm in the ordinary course of business. It is stipulated that the contractor, Mr. Plaskett, purchased lumber from other mills for said contract to the extent of at least ten thousand dollars ($10,000.00) and that, in purchasing the lumber from Blackman Bros., he acted in good faith, in the ordinary course of his business. It is admitted that Mr. Plaskett will testify that he purchased this timber in the ordinary course of his business, and that he had no agreement with Blackman Bros. or the mayor as a member of the firm of Blackman Bros., for a share of any of the profits that might inure to him in the prosecution of his contract with the city for these improvements; and that both Mr. Blackman and Mr. Plaskett will testify that the contract for the sale of the lumber above referred to was entered into subsequent to the time the contract for the improvement herein referred to had been let to Mr. Plaskett by the city of Snohomish, and that there was no understanding of any character whatsoever, had at or prior to the time said contract was let, that the firm of Blackman Bros. were to furnish any part of the lumber to be used in connection therewith. 'That the said H. Blackman was at all of said times a member of a firm known as Blackman Brothers, and owned a large and substantial interest in the business of said firm. That the said firm entered into a contract with the said J. H. Plaskett, the contractor for said work, whereby the said Blackman Brothers agreed to furnish all the lumber required for the planking of said street and the construction of the sidewalks on each side thereof, and agreed to accept in payment for said lumber warrants thereafter to be issued by the said defendant, City of Snohomish, to the said contractor for said work. That large quantities of lumber were used in planking said streets and constructing sidewalks and curbing thereon. That the said Blackman Brothers furnished all the lumber therefor, pursuant to said agreement and received from said contractor in payment therefor warrants issued by said city to said contractor for said work.' "

The record shows that H. Blackman was the mayor of Snohomish at that time. The case of *Northport v. Northport Townsite Co.*, 27 Wash. 543, 68 Pac. 204, is relied on

by respondents to defeat a recovery.   The concrete question presented is, whether the whole claim of an independent contractor can be avoided because in the execution of his contract he has bought necessary supplies or materials from a member of the city council or the mayor.   Although the construction put upon the *Northport* case by respondents may seem warranted, yet we cannot think that it was ever the intention of the court to hold that a dealing on the part of the contractor with the city officer would do more than avoid a contract *pro tanto.*   Bal. Code, § 968 (P. C. § 3510), among other things provides:

".   .   .   and any claim for compensation for work done, or supplies or materials furnished, in which any such officer is interested, shall be void, and if audited and allowed, shall not be paid by the treasurer."

It also provides for removal from office and for punishment in case of wilful violation.   The statute is aimed at the officer, and intended to prevent a recovery on his part or to the extent of his interest when the claim is asserted by another.   This object is attained when the amount of his interest is determined and rejected.   Out of the whole amount due on the original contract, the value of the material furnished, and in which the mayor had an interest, was inconsiderable.   The record shows that an appeal is pending from the order of assessment.   The correctness of the amount of the assessment is made a proper subject for the determination of the superior court upon such appeal, and we doubt not that the court will reject the warrants so unlawfully issued, as well as consider other irregularities, and give judgment accordingly.

This cause will be reversed, and remanded for further proceedings in accordance with this opinion.

RUDKIN, C. J., MORRIS, and GOSE, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to distinguish this case from that of *State ex rel. Seymour v. Slater,* cited

in the majority opinion, and on the authority of that case, I think this one should be affirmed.