[No. 9592.  Department Two.  February 7, 1912.]

THE STATE OF WASHINGTON, *on the Relation of R. S. Gladwin, Appellant*, v. THE CITY OF CHENEY *et al., Respondents*.[1]

JUDGMENT—BAR—ESTOPPEL BY JUDGMENT—MATTERS THAT MIGHT HAVE BEEN LITIGATED. Where a holder of warrants brought a suit in equity setting out three warrants and alleging that he and others held other similar warrants, and that he brought the suit for the benefit of all to avoid a multiplicity of suits, seeking the affirmance of a principle upon which all of his warrants and others might be validated, and on appeal a decree established the validity of the three warrants in question, and remanded the case for the purposes of taking testimony to determine the validity of plaintiff's other warrants, opening the door of equity for plaintiff to establish the validity of all his warrants, whereupon he presented part of his warrants but withheld others, a final decree establishing the validity of the warrants presented by the plaintiff may be pleaded as an estoppel against a subsequent action prosecuted by plaintiff to establish other similar warrants held by him at the time but not presented in the first suit; since the same might have been litigated in the former action.

MUNICIPAL CORPORATIONS — WARRANTS — VALIDITY OF CONTRACT WITH OFFICER. Warrants issued under a contract made between the city and the president of a water company at a time when he was mayor of the city are voidable at common law, at the option of the city.

Appeal from a judgment of the superior court for Spokane county, Sullivan J., entered January 14, 1911, in favor of the defendants, upon quashing a writ of mandamus, after a trial to the court, dismissing an action for equitable relief. Affirmed.

[1]Reported in 121 Pac. 48.

*Danson, Williams & Danson* (*George D. Lantz*, of counsel), for appellant.

*Happy, Winfree & Hindman*, for respondents.

CHADWICK, J.—Relator brought this proceeding to establish the legality and compel the payment of certain warrants, issued by the city of Cheney between the years 1891 and 1895. Relief was denied below, and relator has appealed.

Two principal defenses are urged: (1) That of *res adjudicata*—or, to be exact, estoppel by judgment; and (2) that the warrants were issued under a contract made between the city and the Cheney Water & Land Company, of which D. C. Percival was president. Mr. Percival was also mayor of the city. It is said the warrants are therefore void under the statute; or, if it be held that the statute does not apply to the city of Cheney which was then operating under a special charter, that they are voidable under the common law rule. We find nothing in the record to indicate the ground upon which the trial judge based his judgment, but are of opinion that it can be sustained upon either of the defenses mentioned.

To discuss the plea of *res adjudicata*, it will be necessary to refer to previous litigation between these same parties. In the year 1899, relator brought this suit in equity in the superior court of Spokane county in which he alleged that he was the owner of three certain warrants, setting them up *in haec verba*, and prayed that they be established as valid obligations of the city and their payment enforced. In that complaint relator alleged that he was also the owner of other warrants, issued by said city of Cheney in accordance with its charter, amounting to more than $5,000, all of which said warrants were issued between the 1st day of December, 1891, and the 1st day of January, 1895, a large number of said warrants having been issued during the year 1894. He then alleges that all of these warrants were presented to the city treasurer and payment refused because of no funds.

He further alleged that the question to be determined in that action was one of common and general interest to many persons; that the parties so interested were numerous, and that it was impracticable to bring them all before the court, and that he brought his said action in his own behalf and in behalf of all persons having a similar interest in the matter in controversy. He prayed an order of the court enjoining the city from paying warrants subsequently issued out of a so-called "contingent fund," which had been created under a subsequent ordinance; and finally that the officers of the city desist and refrain from drawing or paying any warrant or warrants issued for general municipal purposes, no matter what fund might be named in said warrant, except in the order of their issuance, until the further order of the court. The case came on for trial before the Honorable Wm. E. Richardson, then judge of the superior court, and he held that the three warrants which had been set out in the complaint had been issued at a time when the city had exceeded its debt limit, and they were therefore void.

On appeal from this judgment, this court found the material question to be determined to be, "Were the warrants owned by appellant issued for necessary expenses in maintaining the existence of the municipality?" If so issued, they were valid; if not so issued, invalid. The three warrants were issued for officers' salaries, and their legality was established. *Hull v. Ames*, 26 Wash. 272, 66 Pac. 391, 90 Am. St. 743.

The court said:

"A number of warrants in suit owned by the appellants were found by the court to have been issued for that purpose. Those for services as policemen, marshal, and treasurer come within the requirement of necessities."

And further:

"The findings before us are not specific as to the purpose for which all the warrants for which payment is claimed by appellants were issued. The judgment is therefore reversed,

and the cause remanded, with directions to the superior court to find the nature of all obligations for which the warrants in suit were issued, and that those issued for necessary expenses in maintaining the existence of the municipality be adjudged valid, and that respondents be enjoined from payment from the funds in the city treasury, raised to pay indebtedness, of warrants or indebtedness issued subsequently to appellants' warrants so adjudged valid."

It will be seen that, if the court had in mind the establishment of three warrants and no more, its order on remand was without reason, for its decision ended the controversy as to them. It must have intended its judgment to be the establishment of a principle under which all of the warrants which the plaintiff said that he then held, and those held by others unknown to him and in whose behalf he maintained his suit, might be adjudged to be valid or invalid under the rule of municipal necessity, and paid in the order of their issuance. When the case came on for trial under the remittitur, relator presented other warrants, aggregating $1,585, which were allowed by the court. Some of these warrants were issued in payment for street improvements, labor on the city jail, material for city jail, stove and fixtures for city jail, painting city jail, material for construction, labor, guarding quarantine patients, publication of notices, board of city prisoners, insurance, assessment roll, coal for city offices, recording book for city, cash expended by city clerk, book for city clerk, glass for city, expenses of making deed to lots for city, and city printing. On appeal, the city contended that these warrants, being issued for purposes other than officers' salaries, did not come within the rule of the former decision. But still adhering to the broad ground of governmental necessity, this court said:

"It is not believed that philanthropy or patriotism can be depended upon to supply, without cost, for any great length of time, either the services or the material necessary to the transaction of the business of the city; and the payment of such expenses is therefore necessary for the per-

petuation of its corporate existence. The warrants in question all seem to be valid, under the rule announced in *Rauch v. Chapman, supra* [16 Wash. 568, 48 Pac. 253, 58 Am. St. 52, 36 L. R. A. 407]." *Gladwin v. Ames*, 30 Wash. 608, 71 Pac. 189.

The final judgment in the former case was pronounced February 26, 1902. On February 24, 1908, this action was begun, and the plea of estoppel by judgment interposed. It is insisted that the court did not adjudicate beyond the three warrants described in the complaint; or, as said in the opinion, the "warrants in suit." Upon the theory that a separate action could be maintained for each warrant (and of this we have no doubt), this might be true; but relator did not bring an action at law or a special proceeding directed to a recovery upon specific warrants. He came into equity exhibiting three warrants, to show the character of the obligations held by him and by others, and of which he said he had other warrants amounting to more than $5,000. It will be seen that his suit can only be sustained upon the theory that he was seeking the affirmance of a principle upon which all of his warrants and all of a similar character might be validated and paid in their order, rather than a recovery upon the three warrants described in his pleadings. Accordingly, when the door of a court of equity had been opened at his request, he might have offered every warrant then in his possession for its inspection and judgment. He offered a part and reserved a part, and after a term of years has brought this proceeding at law to establish warrants the ownership of which he had pleaded in the former proceeding and which he should have then submitted to the court.

Relator relies upon *Nesbit v. Riverside Independent District*, 144 U. S. 610, and *Cromwell v. County of Sac*, 94 U. S. 351. These cases go no further than to hold that a party who brings an action upon one or more coupons, or a bond of a series, is not estopped to bring an action upon others which he might have included. In other words, as a rule a

judgment will only operate to bar a recovery upon what was the subject-matter of the former suit.

"The rule is that, in an action between the same parties, a judgment therein is *res adjudicata* as to all points in issue, and also all points which might have been raised and adjudicated." *Olson v. Title Trust Company*, 58 Wash. 599, 109 Pac. 49.

See, also, *State ex rel. Schmidt v. Superior Court*, 62 Wash. 556, 114 Pac. 427. There will be no disharmony in the application of these rules, if we bear in mind that the words, "might have been raised and adjudicated," are construed with particular reference to the subject of the inquiry. They do not mean merely that a party had an opportunity to submit the "point" as a separate cause of action, for it has never been held that separate and divisible claims could not be made the subject of independent suits. But they mean rather that, when the court has jurisdiction of a whole subject-matter, a duty rests upon the litigant to so conduct his case as to bring the controversy to a final termination. So here, plaintiff invited and obtained the establishment of a rule which applied to all the warrants held by him, and under it the order of their payment might have been adjudged by the court. The court was open to hear and determine, and having waived his opportunity, relator should now be held to the rule of estoppel by judgment.

"Appellant had his day in court, and cannot be heard further. While it is our boast that the courts of our country are always open, it does not follow that they are open always. There must be an end of litigation over a given subject-matter." *Kath v. Brown*, 53 Wash. 480, 102 Pac. 424, 132 Am. St. 1084.

"A party therefore must present in one action all the reasons, grounds, and evidence which he may have in support of his claim or defense, and if he has several claims or titles to the property in controversy he must assert them all. Again if a party is brought into a case and has a fair legal opportunity to present and enforce any claim he may have in relation to the subject-matter he must avail himself of it, and

whether an original party or an intervener, he must present his whole case, extending his claim so as to embrace everything which properly constitutes a part of his cause of action or defense." 23 Cyc. p. 1170.

When plaintiff invited the interposition of a court of equity, he properly made a full disclosure of his relation to the city; and the application of the principle which we have just announced is but a restatement of the old rule that, when equity has assumed jurisdiction for any purpose, it extends to the whole controversy, so that a multiplicity of suits may be avoided.

We are also of opinion that the warrants, if otherwise legal, are voidable because of the fact that they were issued under a contract made between the president of the water company and the city at a time when that officer was the mayor of the city. It seems that, under Ordinance No. 93, the city of Cheney had directed its officers to enter into a contract with one Frederick Carroll, to whom it had given a franchise to lay water pipes under and through the streets of the city of Cheney. This contract expired by limitation on September 1, 1890. On the 21st day of August, 1890, another Ordinance was passed—No. 125—in which it was recited that Carroll had disposed of his franchise rights to the Cheney Land & Water Company, and the officers of the city were authorized to enter into a contract with that company. It is earnestly contended that, inasmuch as Ordinance No. 125 does not materially differ from Ordinance No. 93, the contract is referable to the first rather than to the second ordinance, and therefore valid. We cannot so hold. Ordinance No. 125 is complete in itself and covers the whole subject-matter of the contract. It was passed in lieu of Ordinance No. 93 (which was expressly repealed), at a time when it was evident that Carroll's privilege would expire by limitation and without performance. It is unnecessary for us to hold the contract to be void under § 7702, Rem. & Bal. Code, as construed in *Northport v. Northport Townsite Co.*,

27 Wash. 543, 68 Pac. 204; *Parsons v. Tacoma Smelting &*
*Refining Co.,* 25 Wash. 492, 65 Pac. 765; and *Shaw &*
*Hodgins v. Waldron,* 55 Wash. 271, 104 Pac. 272, 28 L. R.
A. (N. S.) 735, for it is doubtful whether the statute should
be held to apply to a city operating under an independent
charter.    But in any event, the city having raised this de-
fense, the common law rule that such contracts are voidable
(Dillon, Mun. Corp., 5th ed., 773) must be held to apply.

This disposition of the case makes it unnecessary to notice
other defenses urged by the city.    Judgment affirmed.

DUNBAR, C. J., MORRIS, ELLIS, and CROW, JJ., concur.