[No. 10258.    Department One.    October 22, 1912.]

Pasco Reclamation Company, *Appellant*, v. Volney B. Cox, *Respondent*.[1]

Waters and Water Courses—Irrigation—Contract for Water—Indefiniteness—Meeting of Minds. A contract whereby the defendant intended to purchase from plaintiff a water right for irrigating ten acres of land is so indefinite and uncertain that it cannot be enforced, where the contract contemplated irrigation works for irrigating 2,500 acres of land, but the owners of only 500 acres signed up, agreeing to take the number of acre water rights set opposite their names, for the purpose of irrigating the 2,500 acres "pro rata," with water rights in "all essential respects" similar to a "blank form" attached, originally prepared for the owners of all the lands, the terms of the two contracts being irreconcilable, and there being no way to determine in what "essential respects" they should be read together; since there was no meeting of minds thereon.

Appeal from a judgment of the superior court for Franklin county, Holcomb, J., entered November 10, 1911, dismissing an action on contract, upon withdrawing the case from the jury. Affirmed.

*Driscoll & Leonard* and *Parker & Richards*, for appellant.

*H. B. Noland* and *Milo A. Root*, for respondent.

Gose, J.—In the spring and summer of 1909, the plaintiff was engaged in promoting a scheme whereby 4,000 acres of land, in the vicinity of Pasco, should be conveyed to Pasco Fruit Lands Company, a Washington corporation, in ex-

[1]Reported in 127 Pac. 107.

change for water rights for an equal number· of acres, the water to be supplied by the plaintiff. The plan contemplated was that the plaintiff should construct an irrigation system capable of perpetually supplying water between the first day of April and the first day of October of each year, to the extent of 1½ acre feet per acre per year, for irrigating 4,000 acres of land belonging to those who should convey a like number of acres to the holding corporation. The negotiations for the accomplishment of that object were carried on between the plaintiff and a citizens' committee. The time for the completion of the plan was July 31, 1909. At that time contracts had been made for about one-half of the land only. The plaintiff then entered into a contract with the defendant and others, whereby it agreed to construct an irrigation system and they agreed to purchase water rights for 500 acres of land. Before making this contract, the plaintiff had prepared a tri-party printed contract suitable for the object first stated. The contract between the plaintiff and the defendant and other parties who, in the aggregate, agreed to purchase water rights for 500 acres of land, omitting signatures and the blank form attached, is as follows:

"Whereas, the Pasco Reclamation Co:, a corporation organized under the laws of the state of Washington, has executed and is executing contracts with sundry individuals to construct an irrigation works on or before April 1, 1910, for the purpose of watering certain lands in the vicinity of Pasco, Washington, a blank form of such contracts being hereunto annexed.

"And whereas, sufficient of the contracts therein required for the conveyance of the 4,000 acres of land to the Pasco Fruit Lands Co. therein described, have not been delivered, although the time for doing so has expired.

"And whereas, it is essential that work tending to the construction of said irrigation works shall be instituted without further delay in order that such works may be completed by April 1, 1910, so that water may be then·available for the irrigation of said lands.

"Now therefore witnesseth: That in consideration of the premises and of the benefits to be derived by the undersigned .

through the construction of said irrigation works and as an
inducement to said Pasco Reclamation Co. to construct the
same, we, the undersigned, do hereby agree to purchase, or
cause to be purchased, upon the completion of said irrigation
works on or before April 1, 1910, the number of acre-water-
rights set opposite our respective names, for the purpose of
irrigating the following described lands pro rata and no
others, to wit:

"The SE¼ of Sec. 20, the W½ of Sec. 28, all of Sec. 29
and S½ and NE½ and E½ of NW¼ of Sec. 30, lots 1, 7, 8
and 9, and N½ of NE¼ of Sec. 31, and N½ and lots 1, 2,
3 of Sec. 32, the N½ of NW¼ and SW¼ of NW¼ of Sec.
33, all in T. 9 N. R. 30 E. W. M.   The E½ of SE¼ of Sec.
25, T. 9 N., R. 29 E., W. M.

"Provided, and this agreement is made upon the condition
that said Pasco Reclamation Co. shall enter upon the work
of constructing said irrigation works on or before September
1st, 1909, and that water rights which we agree herein to
purchase are and shall be in all essential respects the same as
those described in the blank contract hereto annexed and shall
be subject to an annual maintenance charge of $5.00 per
acre-water-right and to all other regulations, rules and stipu-
lations set forth in said blank contract in so far as the same
may be made to apply under this agreement, 'and that such
water rights shall be at such point or points as may be mu-
tually agreed on,' but in no event shall the said Pasco Recla-
mation Co. be required to deliver it over or across any of said
lands which are now or which may be hereafter platted into
lots or blocks.

"And we hereby agree to pay for said water rights at the
rate of $100 per acre-water-right in ten annual installments
of equal amounts with interest at 6% per annum, payable
semi-annually, or in 5% semi-annual interest 20-year bonds
of the town or city of Pasco or in such local improvement
bonds as such town or city may legally issue or cause to be
issued for the construction of irrigation works.

"Signature.                    Number acre-water-rights."

The blank form attached is the tri-party printed contract
referred to.   It provides:

"In consideration of this agreement and the conveyance of
the above described real estate by said parties of the first part

to said party of the third part, said party of the second part, its successors and assigns, hereby agrees to, on or before April 1st, 1910, construct an irrigation system with sufficient capacity to provide and to thereafter perpetually supply water between the first day of April and the first day of October of each year, to the extent of one and one-half (1½) acre feet per acre per year or so much thereof as shall be required for irrigating the following described real estate. . . . . . . Said first parties, for themselves, their heirs and assigns, shall pay to said party of the second part, its successors or assigns, an annual charge for said water of Five ($5.00) Dollars per acre."

The defendant signed for a ten-acre water right, at $100 per acre, payable in ten equal annual installments. This suit is brought upon the contract to recover the first two installments and the annual charge of five dollars per acre for two years. At the close of the plaintiff's testimony, the court withdrew the case from the jury and entered a judgment of dismissal, on the ground that "the contract sued on lacks mutuality, and is so indefinite and uncertain that it cannot be enforced." The plaintiff prosecutes the appeal. The appellant completed its water system and had it ready to operate on July 1, 1910. We will assume that the evidence shows that the delay was caused by unforeseen contingencies and inclemency of the weather.

The appellant contends that the contract is a subscription contract and that its primary purpose was not to give the respondent a water right, but to induce the appellant to construct and install a pumping plant and irrigation system which would take water from the river and distribute it to the lands in and about Pasco, and thereby enhance the value of the lands of those who signed the contract.

The appellant's view is untenable. The contract plainly shows that the respondent was intending to purchase a water right for the purpose of irrigating ten acres of land. He cannot have 1½ acre feet per acre per year upon the ten acres, when the water rights purchased embrace 500 acres

and the contract specifies that the water shall be used for the purpose of irrigating certain described lands, aggregating 2,500 acres, pro rata. It is apparent that, owing to the loose method of contracting, the minds of the parties never met upon any definite settled facts. The contract recites that it is essential that the irrigation works shall be completed by April 1, 1910, so that "water may be then available for the irrigation of said lands"; that the respondent and those uniting with him agreed to purchase, upon the completion of the works, "the number of acre water rights set opposite our respective names for the purpose of irrigating" the 2,500 acres of land described in the contract "pro rata." It is conceded that only about 500 acres of water rights were purchased. The contract further recites that the water rights which the respondent agreed to purchase "shall be in all essential respects" the same as those "described in the blank contract" attached.

It is amazing that parties should make a contract and attach a blank form of contract in some important respects utterly irreconcilable with the written contract which they have signed, and then seek to put the burden upon the courts of determining in what "essential respects" the two should be read together. The two papers are so irreconcilable that they cannot be harmonized unless we rewrite the contract, and this is not a judicial function. It is true that it is the business of the court to seek to ascertain and give effect to the intention of the parties as gathered from the language of the contract, but this cannot be done in the case at bar without rejecting a part of the written contract. The respondent cannot have water to the extent of $1\frac{1}{2}$ acre feet per acre per year for ten acres, when it is to be pro rated over an area of 500 acres.

We have carefully read the testimony, and have patiently endeavored to construe the contract so as to make it an enforcible instrument, but we must confess our inability to do so. We think the learned trial court was right in his

conclusion that it "is so indefinite and uncertain that it cannot be enforced."

Affirmed.

CROW, ELLIS, CHADWICK, and PARKER, JJ., concur.