[No. 10861.   Department One.   January 23, 1913.]

H. Gantenbein et al., Appellants, v. The City of Pasco et al., Respondents.[1]

Municipal Corporations—Public Improvements—Proceedings—Review—Contracts—Validity—Jurisdiction of Courts—Equity—Injunction. The fact that the statute provides for objections to proceedings before a city council to provide for public improvements under the special assessment plan, with the right of appeal to the courts, does not deprive a court of equity of jurisdiction to determine, in an injunction suit, whether the city council had power to enter into a contract under its proceedings for such an improvement.

Same—Contracts — Validity—Interest of Councilmen. Under Rem. & Bal. Code, § 7702, providing that no officer of any city shall be interested directly or indirectly in any contract with such city, a contract between a city and a reclamation company for a public water supply is void, where the contract provided that the water company should supply to landowners in a reclamation district outside the city an extra six inches of water per acre, free of charge, and three of the councilmen whose votes were necessary to authorize the contract were among such landowners and were benefited by the contract; since it was impossible to segregate their interests and leave the contract unimpaired.

Same—Contracts—Validity—Public Policy. Where a reclamation company had agreed to supply water to subscribers who were owners of property in a reclamation district outside of a city, which agreed supply was inadequate to properly irrigate the land, a contract between the city and the reclamation company for a public water supply for the city, in which the reclamation company agreed to furnish an extra six inches of water per acre to such subscribers, free of charge, is against public policy and void; since the city would be paying for the free water furnished to landowners outside the city.

Same—Contracts—Lowest Bidder—Fraud. In the absence of a showing of fraud, a contract for public improvements cannot be attacked because not let to the lowest bidder.

On Rehearing.

Statutes—Construction—Partial Validity—Effect. A statute will be upheld so far as it is legal, if the illegal part can be separated from the legal.

[1]Reported in 129 Pac. 374; 131 Pac. 461.

MUNICIPAL CORPORATIONS — PUBLIC WORKS — LETTING CONTRACT— PROCEEDINGS. A city can pass one or separate ordinances and let one or separate contracts for the construction of a water distributing system.

APPEAL—RECORD—AFFIDAVITS. Affidavits not made a part of the record cannot be considered on appeal.

Appeal from a judgment of the superior court for Franklin county, Holcomb, J., entered July 13, 1912, in favor of the defendants, dismissing an action to enjoin a city from installing a water works system for irrigation and domestic purposes, after a trial on the merits before the court. Reversed.

*H. B. Noland* and *Charles W. Johnson,* for appellants.

*M. L. Driscoll (P. F. Leonard,* of counsel), for respondent city of Pasco.

*Danson, Williams & Danson (George D. Lantz,* of counsel), for respondent Pasco Reclamation Company *et al.*

CHADWICK, J.—The legislature of 1911 passed two acts, chapter 98, p. 441, and chapter 111, p. 510, each designed to aid and empower cities and towns to acquire the benefits of water for irrigation. The city of Pasco, acting by its council, submitted a proposition to acquire a water system under chapter 98, the system and source of supply suggested being the one owned by the Pasco Reclamation Company. This was defeated. The council then undertook to provide a system under the special assessment provision in chapter 111. An ordinance was passed providing for the laying of pipes throughout the several assessment districts created by the ordinance, and a contract with the Pasco Reclamation Company was authorized. It will be necessary to advert in some slight degree to the history of this company. Reference may be had to the case of *Pasco Reclamation Co. v. Cox,* 70 Wash. 549, 127 Pac. 107, where the plan of organization and the purposes of the company are set forth. The testimony in this case shows that the contract of the com-

pany to furnish water to irrigate the lands described in the *Cox* case, all of which was outside of the city limits of Pasco, had been entered into under the mistaken belief that eighteen inches of water per annum were sufficient to raise and mature crops, whereas it has been practically demonstrated, and further in the opinion of experts, no less than twenty-four inches of water per annum are necessary.

Certain of the councilmen of the city of Pasco owned land under the irrigation project of the reclamation company, and had subscribed to the contract considered in the *Cox* case. In the negotiations leading up to the contract, and as it seems, as an inducement to the city to enter into the contract with the reclamation company, it was proposed that, in the event the city entered into a contract with the company and issued bonds in the sum of $50,000 and provided for an annual maintenance charge, all to be collected under the special assessment plan, the company would furnish to each of the contracting parties under its ditches outside of the city, provided they signed up a new contract, six inches of water in excess of the amount originally contracted to be delivered, or a total of twenty-four inches per annum. That part of the reclamation company's contract with the city of Pasco was as follows:

"It is further understood and agreed that certain contracts have heretofore been given to divers and sundry persons granting perpetual water rights to be used upon and appurtenant to certain lands therein described, the quantity of water to be supplied thereunder being only eighteen acre inches per season at $5 and not to exceed six inches additional at thirty-five cents (35c) per inch on each acre of land; and, a part of the consideration accruing to each and all the parties to this contract, and especially to the city of Pasco, is the agreement herein by the Pasco Reclamation Company to furnish to the holders of said last named contracts twenty-four acre inches per acre of land at $5 per acre, during each irrigation season between April 1st and October 1st, and in order to expedite at the minimum cost the modification of said contracts so as to give the said con-

tract holders the increased quantity of water herein offered to them, it is further stipulated that said contract holders may have and enjoy the benefit of said twenty-four acre inches of water per acre of land per irrigation season aforesaid by signifying their several and respective acceptances hereof in writing duly acknowledged and addressed and delivered to said Pasco Reclamation Company, or by joining in the execution of this agreement on or before the 1st day of September, 1912, the terms of said contracts to remain in force except as to the formation of said new corporation, the transfer of said system to it, and the quantity of water to be delivered."

The ordinances having been passed and the contract entered into, work was begun, and shortly thereafter this suit was instituted, plaintiff and others alleging the ordinances and contracts to be void for several reasons which will hereafter be noticed, and praying for a restraining order, and upon final hearing, a perpetual injunction. The case was tried out on its merits, and plaintiffs have appealed from an adverse decision.

The jurisdiction of this and the lower court is challenged by the respondents. The challenge is based upon the statute providing for objections and hearings before the council, and upon the following cases: *Broad v. Spokane,* 59 Wash. 268, 109 Pac. 1014; *Renard v. Spokane,* 48 Wash. 345, 93 Pac. 517; *Rucker Brothers v. Everett,* 66 Wash. 366, 119 Pac. 807, 38 L. R. A. (N. S.) 582; *Chandler v. Puyallup,* 70 Wash. 632, 127 Pac. 293, and many cases from other jurisdictions. This court, in common with others, has held that it is competent for the legislature to create a special tribunal, either directly or indirectly to hear and determine all questions going to the regularity of proceedings brought under statutes providing for improvements made under the special assessment plan, as well as the amount to be charged against specific property; that the conduct of such board, commission, or committee will not be controlled through the use of extraordinary writs; that we will not in such proceed-

ings question the motives of the officers; and that the party aggrieved must first submit to the judgment of the legislative tribunal and then appeal.

There has been much misuse of the word "jurisdiction" in the cases. There is a vast difference between jurisdiction and the exercise of jurisdiction. That the courts have jurisdiction to construe contracts cannot be denied, for it is granted by the constitution. If any of the cases cited seem to hold otherwise, they should not be followed; for in the same cases the jurisdiction of the courts is not only admitted but asserted when it is said that the aggrieved party may come to the courts by appeal, the only question decided being that the legislature may define remedies and direct procedure. The jurisdiction of the court is not defeated or taken away; it is only postponed.

"A court of equity has no rightful authority to interfere with the enactment of municipal ordinances, merely because it may question the expediency of the measures, the motives inducing their enactment, or the regularity of the proceedings by which they are being enacted; it is limited solely to an inquiry into the question of power." *Broad v. Spokane*, 59 Wash. 268, 109 Pac. 1014.

"It undoubtedly is a general rule that the courts will not interfere with an action of a body exercising legislative functions, to correct mere errors or mistakes in its proceedings, or to prevent the passage of a law or ordinance duly pending before a legislative body, because it may conceive that the law or ordinance will be ineffective if passed, but clearly the courts have power to inquire into the validity of a law or ordinance after it has passed the legislative body and an attempt to enforce it is made or threatened to the injury of the personal or property rights of the citizen. The courts have exercised this power since the foundation of the government, and it is not necessary now to enter into a discussion of the principles that are thought to justify it." *Smith v. Centralia*, 55 Wash. 573, 104 Pac. 797.

This brings us, then, to the only question open in this case, whether the city of Pasco, acting through its present

council, had power to contract as it did. One or two propositions are advanced by appellant, which it is asserted so tinged the whole proceeding with constructive fraud as to void the contract, and that for this reason a court of equity has unquestioned jurisdiction. We shall not go into a discussion of the difference between, and the effect of, the two statutes first referred to in this opinion, or whether the proceeding might be sustained by reference to Rem. & Bal. Code, § 7685, but will assume that the proceedings and contract are good under one or the other of them, unless they are avoided, (1) by the interest of the councilmen or some of them who voted for the ordinance, and (2) by any law or rule of public policy which would prohibit a city from entering into a contract which is beneficial to those residing outside of the corporate limits of the city when made at the cost of its property owners. To support the first proposition, appellant relies upon the case of *Northport v. Northport Townsite Co.*, 27 Wash. 543, 68 Pac. 204, while respondent relies on *Shaw & Hodgins v. Waldron,* 55 Wash. 271, 104 Pac. 272, 28 L. R. A. (N. S.) 735. These cases were all decided upon the same statute. Rem. & Bal. Code, § 7702:

"No officer of such city shall be interested, directly or indirectly, in any contract with such city, or with any of the officers thereof, in their official capacity, or in doing any work or furnishing any supplies for the use of such city or its officers in their official capacity; and any claim for compensation for work done, or supplies or materials furnished, in which any such officer is interested, shall be void, and if audited and allowed, shall not be paid by the treasurer. Any wilful violation of the provisions of this section shall be a ground for removal from office, and shall be deemed a misdemeanor and punished as such."

It is said by respondent that the *Shaw* case distinguishes the *Northport* case, and that under it the city councilmen, when considering the assessment roll, can correct any irregularity and reject all illegal claims. In the *Shaw* case, an independent contractor had completed an improvement. He

had purchased supplies of various persons, firms, and corporations. Among others, he dealt with the mayor of the town of Snohomish. It was contended that this leaven of illegality voided the whole contract, and that no recovery could be had on any part of it. We held, that the contract intended by the statute was the one entered into by the officer, that when he was denied a recovery, the purpose of the law was accomplished, and that the main contract would be void only *pro tanto*. In other words, where the nonrecoverable items could be eliminated, the assessment roll would be made up and become a lien for the aggregate of the remaining items. We suggested that possibly the *Northport* case had failed to note the difference between valid and invalid claims, and said the statute is aimed at the officer and intended to prevent a recovery on his part, or to the extent of his interest, when the claim is asserted by another. But we did not intend to question the broad rule of statutory and general policy as defined in the *Northport* case. The legality of the principal contract—the one with the city—could in no way be affected by a subsequent dealing with an officer, or a contract on his part to furnish supplies or material; and if this were a case where a recovery was sought by an officer or one claiming under him, we would not hesitate to apply the rule of the *Hodgins* case. But it is not. There is no money demand that can be eliminated. The interest of the affected councilmen lies in the collateral benefit to be received by them, which, because of its nature, is impossible of segregation so as to leave the main contract unimpaired. This case, therefore, necessarily falls within that part of the statute which says, "No officer of such city shall be interested directly or indirectly in any contract with such city." Here three of the councilmen whose votes were necessary had a direct personal interest—an interest not general to all the citizens within the corporate limits of the city or the assess-

ment districts.    If it were so, no legal objection could be urged.

If we assume that the contract was an advantage to the reclamation company (and the law will so presume), the offending councilmen were, to the extent of their interest, sharers in that advantage.    They found relief from a contract to furnish an inadequate supply of water, and substituted therefor one that was designed to make their desert land fruitful and remunerative.    While the statute does not in terms say that a contract so passed is void, the courts have with one accord held that they are so, for it is within the positive meaning of the words "no officer shall be interested" in any contract.    If we hold that, notwithstanding the prohibition of the statute, such contracts can be sustained, then we have written the statute out of the books.    There can be no middle ground where the prohibition of the statute enters into the letting of the original contract.    *State ex rel. Gladwin v. Cheney,* 67 Wash. 151, 121 Pac. 48, was a case of this kind.    As said in the *Northport* case:

"Long experience has taught law makers and courts the innumerable and insidious evasions of this salutary principle that can be made, and therefore the statute denounces such a contract if a city officer shall be interested not only directly, but indirectly.    However devious and winding the chain may be which connects the officer with the forbidden contract, if it can be followed and the connection made, the contract is void."

The question whether the contract is beneficial cannot enter into the inquiry.    When it is made to appear that the councilmen were placed in such a position that their interest might conflict with their fiduciary relation, the inquiry is closed and the bar of the statute falls.    Our conclusion is supported by the following texts and the cases cited therein: 2 Dillon, Municipal Corporations (5th ed.), 772; McQuillan, Municipal Corporations, 513; 28 Cyc. 650.

Coming now to the second proposition, we are of the opin-

ion that the contract is contrary to public policy. We must presume, that the original contract between the outside subscribers and the reclamation company was fair; that the company was furnishing all the water that it could supply with fair profit to itself at the price charged, and that it would not have relaxed its contract but for the contract with the city. Now, if the company in consideration of the collateral contract, the cost of which is met by the citizens within the corporate limits of Pasco, voluntarily furnished this additional water without cost to the landowners, and the testimony shows that there are about 15,000 acres, the presumption follows that the residents within the proposed assessment districts are paying for this extra allowance for the benefit of those outside of the limits of the city. Water in the arid areas of this state is a thing of value, and in the absence of a positive showing, courts will judicially notice the fact that irrigation companies will not make it a subject of gift. We cannot hold that any public improvement within a city can be allied with separate contract rights outside the municipality. To do so would put the hazard of litigation upon the city or upon the owners of property therein, and this is a consequence which the law would not tolerate.

Counsel for the city of Pasco make the point that the case should not turn upon a construction of the contract, because to do so would be to ignore § 31 of the public service commission law, which is designed to protect all patrons of public service corporations from impositions in the way of excessive or unreasonable rates; that if it should now or hereafter appear that the contract is burdensome to the citizen, the commission and the courts can force a reasonable rate irrespective of statute or contract. Granting, without admitting, that this might be true if the only question before us was one of rates, the principle cannot enter or control this case, for the contract being made in contravention of the statute and of public policy, it matters not whether it is beneficial or subject to correction at the end of an inquiry or

a lawsuit. In law it is not merely an irregular contract, but it is as if no contract had ever been entered into.

As a part of the plan, the city let contracts for piping systems to be laid through the assessment districts. These contracts are attacked because not let to the lowest bidder. There is no showing of fraud, and therefore the contract cannot be objected to on the ground urged. The case falls within the rule announced in *Stern v. Spokane*, 60 Wash. 325, 111 Pac. 231.

The case is reversed, and remanded with instructions to enter a decree in accordance with this opinion.

CROW, C. J., GOSE, PARKER, and MOUNT, JJ., concur.

## ON REHEARING.

[Decided April 15, 1913.]

PER CURIAM.—One of the questions raised in this case was that the contract let by the city of Pasco to the defendant Lund was invalid, for the reason that it was not let to the lowest bidder. It was our conclusion that the evidence brought the case within the rule announced in *Stern v. Spokane*, 60 Wash. 325, 111 Pac. 231. We are asked to restate or modify our opinion, inasmuch as the parties are not certain whether our holding would deprive Lund of the benefit of his contract. The ordinance we held to be invalid provided for the letting of a contract for the piping or distribution system, as well as for the purchase of water from the Pasco Reclamation Company. Under chapter 98, Laws 1911, p. 441, and chapter 111, Laws 1911, p. 510, the power is granted to the city to construct "a piping system for the distribution of water . . . by the establishment and creation of assessment districts," provided that the mayor and council shall by ordinance or resolution adopt plans therefor. The record does not disclose any objection to Lund's contract, other than that it was let under the same ordinance that we held to be invalid in so far as the Pasco Reclamation contract was concerned. It is not shown that the council, or any of them, had

any interest in the contract of Lund. We did not intend to hold that the contract with Lund was invalid, for the reasons urged against the Pasco Reclamation contract. It seems to us that our opinion inferentially holds just the contrary. This court has habitually set itself against any interference with the discretion of the legislative bodies of the state, and has gone so far as to hold that, if the illegal can be separated from the legal, we will sustain that which is good and reject that which is bad. We feel warranted in applying that rule in this case. We think the case falls within the spirit, if not the letter, of *Shaw & Hodgins v. Waldron*, 55 Wash. 271, 104 Pac. 272, 28 L. R. A. (N. S.) 735. To hold otherwise would be to hold that the city is bound to let a contract for its distributing system at the same time it acquires water and as a part of the same general scheme; whereas the rule, as we understand it to be, is that the city can pass one or separate ordinances and let separate contracts for all or any part of the work, or may, if not otherwise restrained, do the work or any part of it itself. Our holding therefore, is that the contract of the city of Pasco with the defendant Lund does not come within the rule announced in the case against the Pasco Reclamation Company.

With the petition for rehearing and restatement of our opinion, an affidavit is offered tending to show that one of the council had an interest in Lund's contract. The affidavit is made by a third party, and is not certified as a part of the record, and will not be considered.