[No. 22915-3-II. Division Two. November 20, 1998.]

THE CITY OF RAYMOND, *Respondent*, v. MICHAEL RUNYON, as *Public Works Commissioner, Appellant*, WASHINGTON STATE AUDITOR, *Intervenor.*

128

*David L. Edwards* of *Edwards & Hagen*, for appellant.
*Michael S. Turner*, for respondent.
*Christine O. Gregoire, Attorney General*, and *Mary Jo Angelo Diaz, Assistant*, for intervenor.

HUNT, J. — Michael Runyon appeals a summary judgment finding that he violated RCW 42.23.030 because his

interest in a city contract conflicted with his duty as Public Works Commissioner. Runyon owns a rock quarry two and one-half miles outside Raymond, Washington. The citizens of Raymond elected him Public Works Commissioner. Runyon's quarry sold rock to contractors holding city contracts authorized both before and after he took office. Runyon tried to insulate himself from violating the statute by delegating authority to approve change orders to a subordinate and by giving rock to the city when yearly direct sales approached the $9000 statutory limit. Holding that after Runyon took office, his rock sales to city contractors in excess of $9000 yearly violated the statute, we affirm.

## FACTS

The parties stipulated to the following facts on summary judgment. In November 1995, the citizens of Raymond elected Michael Runyon Commissioner of Public Works; he took office on January 2, 1996. Runyon owns a local rock quarry, one of two in the area that supply gravel to local contractors. At that time, Raymond (City) was a noncharter code city, governed by a commission form of government under RCW 35.17. Executive and administrative powers were distributed among three commissioners. One Commissioner served as mayor; a second, as financial officer; and the third, as superintendent of public works. Runyon held the latter public works commissioner position.

The duties of Commissioner of Public Works were set forth in Raymond Ordinance 415, enacted in 1918. The ordinance provided that the Commissioner of Public Works has general control of streets, alleys, city buildings, parks, and all public improvement constructed by the City, subject to action of the commission as a whole. Runyon delegated the day-to-day responsibilities of the public works department work to City Engineer Rebecca Chaffee, but Runyon retained policy-making authority. Chaffee reported to the Commissioner of Public Works and therefore was directly supervised by Runyon.

One month after taking office, in February 1996, Runyon

became concerned about a potential conflict of interest because his quarry supplied rock and gravel to contractors doing business with the City. Runyon sent Chaffee a memo authorizing her to approve and sign all future change orders, which she did without review by Runyon. Runyon sought legal advice from the City attorney. By letter, dated March 18, 1996, the City attorney recommended the following precautions against possible conflicts: (1) The City should ascertain whether any prearrangements existed between contractors and Runyon's business; (2) Runyon should not participate in discussions regarding any such contracts; (3) Runyon should not vote on any contracts or matters in which he operated in a fiduciary capacity; and (4) Runyon should not supervise any contracts in which he might have a pecuniary interest.

Runyon's rock quarry continued to sell gravel to contractors holding City contracts, including contracts supervised by the pubic works department. A City public works contract for a riverfront corridor improvement project had been executed on August 9, 1995, before Runyon's election. Under this contract, the general contractor, Rognlin's, Inc., purchased $32,437.89 worth of rock and gravel from Runyon in 1996, after he took office.[1] Change orders signed by Chaffee authorized purchase of an additional $14,829.10 worth of rock and gravel from Runyon in April and July 1996.

A second contract, for a riverfront rails to trails project, had been executed on December 18, 1995, about two weeks before Runyon took office. Under this contract, Runyon sold $24,278.88 worth of rock and gravel to City contractor St. Clair Construction after he took office in 1996.[2] Change orders approved by Chaffee in March, June, and October 1996, authorized an additional $536.37 purchase from Runyon.

---

[1]Rognlin's, Inc., was general contractor for the Raymond/South Bend Riverfront Corridor Improvement Project, with an estimated total cost of $783,428.50.

[2]St. Clair Construction was the contractor for the Raymond/South Bend Riverfront Rails to Trails Project, with an estimated total project cost of $198,527.50.

Runyon had served as Commissioner of Public Works for five and one-half months when on June 17, 1996, the City entered a third contract, for construction of a sewer extension.[3] The contractor, again Rognlin's, bought $11,917.80 worth of rock and gravel from Runyon. As Commissioner of Public Works, Runyon occasionally supervised work performed by employees of the Public Works Department. But he did not directly supervise any work performed under any of the three contracts at issue here.

Runyon sold $8,977.97 worth of additional rock directly to the City during 1996, at which point Runyon ceased selling rock directly to the City. When the City needed rock immediately for an emergency, Runyon donated rock to the City because he believed he had reached the statutorily allowed $9000 limit for sales to the City.

Runyon had no prearrangements for supplying rock to either Rognlin's or St. Clair. But under the two preexisting contracts, Runyon's quarry sold a total of $72,082.24 worth of rock to these city contractors, including change orders, in 1996, after he took office. Under the third contract, Runyon sold $11,917.80 worth of rock and gravel to city contractors in 1996, after he took office. Runyon also sold an additional $8,977.97 worth of rock directly to the City in 1996. Thus, in 1996 Runyon sold the City, both indirectly and directly, rock and gravel totaling $92,978.01.

In November 1996, the City attorney advised the commissioners that Runyon was in violation of RCW 42.23.030. The City filed a complaint for declaratory judgment, asking the court to determine whether Runyon had violated RCW 42.23.030 and whether he must forfeit his office. The State Auditor issued a special report on the City, disclosing that Runyon's rock sales had exceeded the statutory limit of $9000. The Washington Attorney General intervened on behalf of the State Auditor. On June 11, 1997, the Pacific County Superior Court granted the City's and intervenor's motion for summary judgment. Runyon appealed directly

---

[3]Rognlin's was the contractor for the Hewitt Addition Sanitary Sewer Extension, with an estimated total project cost of $259,395.00.

to the Washington Supreme Court, asserting a matter of great public import. The Washington Supreme Court transferred the appeal to Division Two.

In November 1997, the citizens of Raymond voted to replace the commission form of government with a mayor-council form of municipal government. By popular vote, the office of Commissioner of Public Works, held by Runyon, was abolished. Runyon won election to the newly formed city council.[4]

## ANALYSIS
### I. Appellate Procedure
#### A. Mootness

The question of whether Runyon should forfeit the office of public works commissioner is moot because the office has been abolished. Nonetheless, both parties ask this court to address the issues raised by this appeal for two reasons: First, the issues are of continuing public importance and the situation is likely to arise again. Second, Runyon is now a member of the newly formed City council and contractual conflicts will likely continue as long as Runyon owns the rock quarry that supplies rock to the City.

RCW 42.23.030 has received little judicial attention, and the questions presented are of a public nature. Review can provide future guidance to public officers. *See Dioxin/ Organochlorine Ctr. v. Pollution Control Hearings Bd.*, 131 Wn.2d 345, 351, 932 P.2d 158 (1997). In addition, Runyon challenges the statutorily imposed fine of $300. Thus, we review the issues raised in this appeal, without regard to mootness.

#### B. Standard of Review

On motion for summary judgment, the trial court considers the evidence in the light most favorable to the non-

---

[4]At oral argument, counsel advised the court of Runyon's election to the new city council.

moving party. Summary judgment is appropriate if the evidence reveals no genuine issue of material fact, reasonable persons could reach but one conclusion, and the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982); CR 56(c). On review, the appellate court considers the same evidence and engages in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990); CR 56(c).

## II. Conflict of Interest
### A. Legislative History

 For more than a century the Washington Legislature has prohibited contracts that may interfere with a public official's fiduciary duty to the public. Washington courts have strictly enforced the statutory bar against contracts in which public officials have beneficial interests. Under this statutory scheme, any contract in which an official has an interest is void as to the official's interest, and an official who willfully violates the statute is subject to removal from office.[5] Good faith on the official's part does not mitigate the effect of the statute upon the contract. *See*

---

[5] If the contract falls within the statutory prohibition, the court must declare the contract void. *City of Northport v. Northport Town Site Co.*, 27 Wash. 543, 549, 68 P. 204 (1902). "However devious and winding the chain may be which connects the officer with the forbidden contract, if it can be followed and the connection made, the contract is void." *Northport*, 27 Wash. at 549. In *Northport*, a city council member voted on a contract that required lumber for city sidewalks. The council member prearranged with the contractor to supply the lumber if the contract were awarded, and then voted to award the contract. The court held that such constituted an interest in the contract. *Northport*, 27 Wash. 543, 546-48.

*See also Gantenbein v. City of Pasco*, 71 Wash. 635, 129 P. 374 (1913), in which Pasco city council members' contract to supply irrigation water to their farms was declared void by the court. The council members' farms were outside city limits; their water supply contract did not involve the city. They subsequently discovered the contracted water supply to be inadequate. As part of negotiations to develop a water system within city limits, requiring the issuance of bonds and annual maintenance fees, the contractor offered to increase the water supply under the original contract if the new city contract were approved. Although the benefit was derived from an earlier contract not made with the city, the court said that "[w]hen it is made to appear that the councilmen were placed in such a position that their interest might conflict with their fiduciary relation, the inquiry is closed and the bar of the statute falls." *Gantenbein*, 71 Wash. at 642.

*City of Northport v. Northport Town Site Co.*, 27 Wash. 543, 549, 68 P. 204 (1902).

The code of ethics for municipal officers is currently set forth in RCW 42.23. Regarding city officials' interests in contracts, it provides:

> No municipal officer shall be beneficially interested, directly or indirectly, in any contract which may be made by, through or under the supervision of such officer, in whole or in part, or which may be made for the benefit of his or her office, or accept, directly or indirectly, any compensation, gratuity or reward in connection with such contract from any other person beneficially interested therein.

RCW 42.23.030.[6]

In 1961, the Legislature revised the municipal officers code of ethics, HB 516, Laws of 1961, ch. 268, replacing the strict bar against *any interest* in municipal contracts with a bar against contracts made *through or under the supervision* of the public officer:

> It is the purpose and intent of this chapter to revise and make uniform the laws of this state concerning the transaction of business by municipal officers, as defined in this act, in conflict with the proper performance of their duties in the public interest; and to promote the efficiency of local government by prohibiting certain instances and areas of conflict while at the same time sanctioning, under sufficient controls, certain other instances and areas of conflict wherein the private interest of the municipal officer is deemed to be only remote, to the end

___

[6]RCW 42.23.030's predecessor statute read as follows:

No officer of such city shall be interested, directly or indirectly, in any contract with such city, or with any of the officers thereof, in their official capacity, or in doing any work or furnishing any supplies for the use of such city or its officers in their official capacity . . . .

1 Hill's Gen. Stat., art. 6, § 659 (1891). This statute was premised on public policy considerations "inexorably enforced by the courts throughout the history of the common law." *Northport*, 27 Wash. at 548. Public policy demands that public officials should serve unencumbered by private concerns. "It is that principle which requires the trustee to always occupy a position that shall be free from the dictates of any interest that may conflict with the obligations of his trust." *Northport*, 27 Wash. at 548.

that, without sacrificing necessary public responsibility and enforceability in areas of significant and clearly conflicting interests, the selection of municipal officers may be made from a wider group of responsible citizens of the communities which they are called upon to serve.

LAWS OF 1961, ch. 268, § 2. This statement of purpose has remained unaltered since 1961 and is currently codified as RCW 42.23.010.

The new statutory scheme carved out exceptions to the former conflicts prohibition and defined which remote interests would escape scrutiny. Under the 1961 act, a municipal officer could have a minimal interest in city contracts (1) limited in value to two hundred dollars per month, LAWS OF 1961, ch. 268, § 4(5); or (2) falling within the statutory definition of a remote interest, defined as:

(1) That of a nonsalaried officer of a nonprofit corporation;

(2) That of an employee or agent of a contracting party where the compensation of such employee or agent consists entirely of fixed wages or salary;

(3) That of a landlord or tenant of a contracting party;

(4) That of a holder of less than one percent of the shares of a corporation or cooperative which is a contracting party.

RCW 42.23.040; LAWS OF 1961, ch. 268, § 5.

By removing the bar against all city contracts and replacing it with a bar against only contracts made under the official's supervision, the Legislature enlarged the pool of citizens available to hold public office, significantly in small communities. Remote interests, now statutorily defined, no longer expose officials to sanctions under the act. But any contract violating the statute is void as to the interested official's interest, who must pay a three hundred dollar fine and forfeit the office. RCW 42.23.050; LAWS OF 1961, ch. 268, § 6.

The dollar amount exempted from the conflict statute has been increased. Currently, in the case of a noncharter

optional code city, such as Raymond, a municipal officer may have an interest in city contracts made under the officer's supervision up to nine thousand (9,000) dollars yearly. RCW 43.23.030(6). But the officer must disclose the contracts by public list, and if the officer is a supplier or contractor, the officer cannot vote on the city's contract authorization. RCW 43.23.030(6).

## B. Violations
### 1. Contract Supervision

■ As Commissioner of Public Works, Runyon was responsible for all contracts involving public improvements, including those supervised by subordinates. By law Runyon could not delegate his ultimate responsibility. Public powers cannot be surrendered or delegated, and municipal positions created by ordinance can be modified only by ordinance passed by the council. 3 EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 12.38 (Charles R.P. Keating & Gail A. O'Gradney, eds., 3d ed., rev. vol. 1990). Thus, while Runyon could delegate certain duties, such as signing change orders, ultimate responsibility lay with him as Commissioner of Public Works. Contracts made through his office, or change orders signed through his office, were his legal responsibility, whether or not he formally approved them.

### 2. Contracts After Runyon Took Office

■ In spite of well-intentioned attempts to avoid a prohibited conflict of interest, Runyon nonetheless violated the plain language of RCW 42.23. The City's contract for the sewer extension was entered into after Runyon was elected and began serving his term. Under this contract, Rognlin's, the contractor, bought $11,917.80 worth of rock from Runyon in 1996. That Runyon did not vote on this contract does not shield him from statutory violation.

Moreover, even though Runyon had no prearrangements

138

with the contractor on this specific contract,[7] it was reasonable to anticipate that Rognlin's would again buy rock from Runyon under the new contract because the contract specified rock of the type supplied by Runyon; Rognlin's had purchased rock from Runyon in the past under similar contracts; and Runyon owns one of only two rock quarries in the area.

■ Runyon was surely aware of his interest in this contract, or he would not have taken such efforts to attempt compliance with the statute. Runyon's good faith, however, does not save him from the statutory proscription. The only way Runyon could have avoided violating the statute was by not exceeding the $9000 statutory limit on his rock quarry sales under contracts made by or through his office.

### 3. Contracts Before Runyon Took Office

■ The rails to trails and the riverfront corridor contracts were made through or under the supervision of the previous commissioner, not Runyon. Therefore, Runyon's interest in selling rock and gravel to those contractors before he took office was not statutorily proscribed.

### 4. Change Orders To Earlier Contracts

But Runyon's interest in rock sales for change orders under these earlier contracts did violate the statute where those change orders were made after Runyon took office. That Runyon delegated to the City engineer the duty to approve and to sign change orders did not remove his responsibility, especially where the City engineer reported directly to Runyon under her job description.

---

[7]In *Shaw & Hodgins v. Waldron*, 55 Wash. 271, 104 P. 272 (1909), the mayor of Snohomish owned a substantial interest in a local lumberyard and provided lumber to a contractor that had been awarded a city contract for sidewalk construction. As in the instant case, the mayor had no prearrangements with the contractor, and the contractor purchased the lumber in the ordinary course of business after the contract was awarded. The court held that the mayor had an illegal interest in the contract, but voided only that portion in which the mayor had an interest, not the whole contract.

Under RCW 42.23.030, modifications or changes to existing city contracts that require acceptance and consideration are considered contracts made through or under the supervision of the respective municipal officer.[8] The change orders at issue were made through or under Runyon's supervision; thus, such changes were subject to the dollar limitations of RCW 42.23.030. These changes to existing contracts resulted in $15,365.47 of additional rock sales from Runyon's quarry, well above the statutory limit of $9,000.

## CONCLUSION

Runyon had a beneficial interest in excess of $9000 in the 1996 sewer extension contract, which was made through and under supervision of his office. The change orders approved and signed by the City engineer, working under Runyon's authority, were contract modifications also made through and under supervision of his office; they, too, exceeded $9000 in sales from Runyon's quarry. We therefore affirm the trial court's finding Runyon in violation of RCW 42.23 and its imposition of the statutory fine.

---

[8]In *O'Neill v. The Town of Auburn*, 76 Wash. 207, 135 P. 1000 (1913), the public officials were deemed to have no interest in the contract at issue. An existing contract for pavement construction called for crushed rock as the pavement base. But, due to the unavailability of rock, the council and contractor agreed as a matter of public necessity to substitute concrete for the rock, at no change in the contract price. The contractor already had some cement, but the city inspector rejected it as inferior. The contractor then purchased new cement from two sources: one partially owned by the mayor and the second partially owned by a council member. The court held that because the public officials had no interest in the contract at its inception, the officials did not violate the statute. *O'Neill*, 76 Wash. 207, 211-13. The reason there was no interest in the contract at inception is that the original contract did not call for cement. The interest arose only after the parties modified the contract specifications due to public necessity and the city inspector rejected the contractor's cement supply. And, there was no proof before the court that either the mayor or the council member influenced the rejection of the contractor's cement. *O'Neill*, 76 Wash. 207, 210-12.

But here, although Runyon was not a City official at the inception of the first two City contracts under which his quarry sold rock to the general contractors, he was a City official at the time of the change orders. In contrast to *O'Neill*, the change orders here did not alter the material to be used; rather they authorized additional rock to be purchased from Runyon's quarry, in excess of the original contract amount.

140

SEINFELD and ARMSTRONG, JJ., concur.

Review denied at 137 Wn.2d 1030 (1999).