106 P.3d 290 (2005)
125 Wash.App. 760
CITIZENS FOR DES MOINES, INC., and Allan Furney, Respondents,
v.
Gary W. PETERSEN, individually and as City of Des Moines Councilmember, Petitioner.
No. 52344-9-I.
Court of Appeals of Washington, Division 1.
February 14, 2005.
*291 Scott M. Missall, Short Cressman & Burgess, PLLC, Thane Sommerville, Attorney At Law, Seattle, WA, for Appellant.
Michael D. McKay, Peter Gonick, McKay Chadwell, PLLC, Seattle, WA, for Respondent.
KENNEDY, J.
A month after Gary W. Petersen was sworn in as a member of the Des Moines City Council, a for-profit corporation named Citizens for Des Moines, Inc., and its president Allan Furney filed this lawsuit seeking to have Petersen removed from office based on a conflict of interest under RCW 42.23.030.
Ch. 42.23 RCW contains the Code of Ethics for Municipal Officers. Petersen is the president, majority shareholder, and a salaried employee of Petersen Northwest Corporation. That company has six divisions, one of which is Pete's Towing. For several decades before Petersen's election, city police and authorized staff persons from the marina, parks, and public works departments of the city routinely called Pete's Towing when vehicles needed to be towed from city property. The city had no express or implied contract with Pete's Towing, and no written policies regarding towing requests. Pete's Towing was simply preferred by police and other city staff, to the exclusion or near exclusion of other providers, because it was the only conveniently located full-service operator with sufficient trucks and related facilities and equipment to meet the needs of the city, and it had a 40-year history of consistently providing quality service in a professional manner.
The record indicates that police and other authorized staff ask Pete's Towing to remove vehicles from public property and rights-of-way approximately 500 times a year. Pete's Towing shows some $250,000 in accounts receivable on its books for any given year *292 based on these requests, though its actual collections amount to some $100,000 of annual gross revenue. Petersen is paid an annual salary of $60,000 by Petersen Northwest Corporation.
The trial court heard cross-motions for summary judgment, and ruled as a matter of law that each time that Pete's Towing towed a vehicle at the request of a city police officer or other authorized city staff person, a "contract" was formed between Pete's Towing and the City of Des Moines; that Councilman Petersen is beneficially interested in each such "contract" by virtue of his ownership interest in the company that owns and operates Pete's Towing; and that by virtue of Petersen's election to the city council, each such "contract" constitutes a separate violation, by him, of RCW 42.23.030, regardless of any affirmative conduct on his part, or lack thereof.
Accordingly, the trial court ruled that all the individual towing "contracts" between the City of Des Moines and Pete's Towing since Petersen took office to be void, ordered Petersen not to permit Pete's Towing to accept any additional "contracts" with the City of Des Moines while Petersen remained in office, and scheduled a jury trial to determine penalties to be imposed upon Petersen individually.
Petersen sought discretionary review in this court. We granted discretionary review based on probable error that substantially alters the status quo or substantially limits the freedom of a party to act. See, RAP 2.3(b). Because the individual towing transactions that are at issue in this case do not constitute "contracts" between the City of Des Moines and Pete's Towing that are "made by through or under the supervision of" Petersen or the city council "in whole or in part," RCW 42.23.030 does not extend to them. On this record, Petersen is entitled to judgment as a matter of law. Accordingly, we reverse and remand for dismissal of the lawsuit.

I
Review of a trial court's order granting summary judgment is de novo. On review, all evidence must be considered in a light most favorable to the non-moving party. City of Raymond v. Runyon, 93 Wash.App. 127, 134, 967 P.2d 19 (1998) (citing Marincovich v. Tarabochia, 114 Wash.2d 271, 274, 787 P.2d 562 (1990)). Summary judgment is appropriate only if, after viewing all the evidence, reasonable persons could reach but one conclusion and the moving party is entitled to judgment as a matter of law. Runyon, 93 Wash.App. at 134, 967 P.2d 19 (citing Wilson v. Steinbach, 98 Wash.2d 434, 656 P.2d 1030 (1982); CR 56(c)).

II
Ch. 42.32 RCW contains the Code of Ethics for Municipal Officials. RCW 42.23.030 provides:

No municipal officer shall be beneficially interested, directly or indirectly, in any contract which may be made by, through or under the supervision of such officer, in whole or in part, or which may be made for the benefit of his or her office, or accept, directly or indirectly, any compensation, gratuity or reward in connection with such contract from any other person beneficially interested therein.
(Emphasis added). Contracts made in violation of the statute are void, and any municipal officer who violates the statute is liable to the municipality for a fine of $500, and may also be removed from office. RCW 42.23.050.
The Code of Ethics defines "contract" to be "any contract, sale, lease or purchase". RCW 42.23.020(3). Thus, somewhat unhelpfully for our purposes, a "contract" is a "contract." More helpfully, the Code "is directed at self-dealing where a public official would otherwise have the discretion to use his public office to favor his private interests over the interests of others." City of Seattle v. State, 100 Wash.2d 232, 246, 668 P.2d 1266 (1983).
In that case, the City of Seattle enacted a campaign finance ordinance under which both incumbents and challengers could use public funds to partially finance their campaigns by contracting to comply with various mandatory provisions regarding campaign *293 contributions and to limit their campaign expenditures. The ordinance created a Campaign Fair Practices Commission to make rules and hear complaints arising under the ordinance. The ordinance was designed to encourage wide participation of the public in the electoral process, and to reduce the dependence of candidates on special interest contributions. After the State Auditor voiced concerns, the city brought a lawsuit seeking declaratory judgment that the ordinance was valid. 100 Wash.2d at 234-35, 668 P.2d 1266.
After concluding that the ordinance was constitutional, our Supreme Court considered whether any incumbent who decided to participate in public financing would thereby violate RCW 42.23.030, and concluded that there would be no such violation. 100 Wash.2d at 244-45, 668 P.2d 1266. The court reasoned that any such contract by an incumbent was not made "under the supervision" of any elected official within the meaning of RCW 42.23.030 because no elected official had the power to control or direct the work of the Fair Campaign Practices Commission. Moreover, the term "supervision" as used in RCW 42.23.030 contemplates a degree of direction and control, in that standard dictionary definitions of "supervise" include "to oversee for direction; to superintend; to inspect with authority"; "to oversee (a process, work, workers, etc) during execution or performance"; and to "oversee, have the oversight of, superintend the execution or performance of (a thing), the movement or work of (a person)." 100 Wash.2d at 245, 668 P.2d 1266 (citations and internal quotation marks omitted).
The court also observed that the campaign finance ordinance did not compel action by an elected official despite a conflict of interest, for the official could always disqualify himself, and only if he or she failed to do so would there be any conflict of interest. 100 Wash.2d at 247, 668 P.2d 1266.
There is no evidence in this record that Councilman Peterson self-dealt with respect to any individual towing transaction or with respect to towing transactions generally. Instead, after Petersen took office, towing transactions were handled as they had been for decades previously  police officers and other authorized city staff decided which towing company to call, and not because Petersen took office but because they had always done it that way, they almost always called Pete's Towing. Thus, the trial court's ruling is tantamount to a ruling that, given the preference among city police and other authorized officials to use Pete's Towing, due to the superior service it provided, Petersen was simply disqualified from serving as a city council person for so long as he held any interest in Pete's Towing.

III
We first consider whether the individual towing transactions initiated by police and other authorized officials of the City of Des Moines constitute "contracts" between the city and Pete's Towing within the meaning of RCW 42.23.030. We conclude that they do not. For a contract to exist, there must be an offer, acceptance, and consideration. DePhillips v. Zolt Constr. Co., Inc., 136 Wash.2d 26, 36, 959 P.2d 1104 (1998). To be enforceable, every contract must be supported by consideration. King v. Riveland, 125 Wash.2d 500, 505, 886 P.2d 160 (1994). "Consideration is any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange." King, 125 Wash.2d at 505, 886 P.2d 160.
The trial court apparently reasoned that consideration flowed to Pete's Towing each time it towed or impounded a vehicle at the request of a city police officer or other authorized city official because a state statute provides Pete's Towing with statutory authority to recover fees from the registered owner of the vehicle when the vehicle has been towed or impounded at the direction of an authorized official such as a police officer  and because, without that direction from an authorized official, Pete's Towing could not legally tow or impound the vehicle. See generally, RCW 46.55.105(1), RCW 46.55.120(1)(e), and RCW 46.55.140. And the court apparently reasoned that consideration flowed from Pete's Towing back to the city, even though the city was not obligated to pay towing fees, because by towing away the *294 vehicle, Pete's Towing either cleared city streets of a safety hazard, or removed an abandoned vehicle from a city right-of-way, or freed up a publicly-owned parking space after the expiration of the permitted time for parking, or in the case of certain traffic violations justifying impoundment of vehicles, removed an offending driver's vehicle from the streets as permitted by law.
But "[b]efore an act or promise can constitute consideration, it must be bargained for and given in exchange for the promise." King, 125 Wash.2d at 505, 886 P.2d 160 (citing Ward v. Richards & Rossano, Inc., P.S., 51 Wash.App. 423, 432, 754 P.2d 120 (1988); other citations omitted). Such economic benefit as may flow to Pete's Towing by virtue of a request by a Des Moines police officer that a vehicle belonging to a third party be towed or towed and impounded flows by operation of Ch. 46.55 RCW, and not in exchange for any promise made by the police officer. Municipal authority to authorize towing and impoundment derives from state statute, specifically, Ch. 46.55 RCW. Towing companies and the impounding of vehicles are heavily regulated by the state. The fee rights and lien rights of towing companies derive from statute, not from any business arrangement between a city and the company.
Towing companies must be licensed by the state; their tow trucks must be physically inspected by the Washington State Patrol before permits to operate them may be issued; and their storage facilities are subject to annual inspection by the State Patrol. RCW 46.55.040. Tow trucks must be rated by towing capabilities. RCW 46.55.050. Fee schedules must be approved by the Department of Licensing, towing fees must be charged on an hourly basis, and after the first hour must be charged to the nearest quarter hour; and storage fees must be charged on a 24-hour basis, and to the nearest half day from the time the vehicle arrived at the storage area. RCW 46.55.063.
Police officers may but are not required to impound vehicles in certain circumstances specified by statute, and to cause them to be removed to a place of safekeeping. RCW 46.55.113. Because impoundment is a seizure for purposes of the Fourth Amendment, impoundment must be reasonable  and impoundment is not reasonable when a reasonable alternative exists. See, e.g., State v. Houser, 95 Wash.2d 143, 153, 622 P.2d 1218 (1980). An agency that attempts to limit police officer discretion regarding when to impound a vehicle exceeds its statutory authority. In re Impoundment of Chevrolet Truck, WA License # A00125A, 148 Wash.2d 145, 156-57, 60 P.3d 53 (2002).
Municipalities may pass ordinances concerning unauthorized, abandoned, or impounded vehicles, so long as the ordinances include applicable portions of Ch. 46.55 RCW. RCW 46.55.240(1). Municipalities may enter into contracts with registered towing companies for the impounding of vehicles. RCW 46.55.240(4). However, such municipalities remain subject to Fourth Amendment requirements regarding the seizure of property, and they may not limit police officers' statutory discretion regarding when to impound and not to impound a vehicle. Houser, 95 Wash.2d at 153, 622 P.2d 1218; Impoundment of Chevrolet Truck, 148 Wash.2d at 156-57, 60 P.3d 53.
The City of Des Moines has not made any such contract, express or implied, with Pete's Towing. Not only has Councilman Petersen engaged in no self-dealing, but even if inclined to do so, his ability, and that of the city council as a whole to affect the exercise of discretion by police is limited, both by statute and the Fourth Amendment.

IV
As a practical matter, Petersen would have no reason to try to influence an officer's choice of which towing company to call  Pete's Towing became the near-unanimous choice of officers not based on Petersen's recent election to the city council but based on 40 years of reliable service by the company. Moreover, Petersen would be barred by law from supervising or overseeing an individual officer's discretion  or that of the police chief for that matter  regarding which towing company to call on any given occasion. Des Moines is a non-charter code city with a council-manager form of government. *295 The seven-member city council appoints the city manager, who in turns appoints the chief of police and other department heads. RCW 35A.13.010. Although the manager reports to the city council, the city manager is the sole person vested with authority to supervise the administrative affairs of the city. RCW 35A.13.080. And RCW 35A.13.120 expressly provides that "neither the council nor any committee or member thereof shall give orders to any subordinate of the city manager, either publicly or privately." Thus, we reject the premise that Councilman Petersen could, if he wanted, supervise the decision of an officer on the beat with respect to which towing company to call on any given occasion.
A city can enter into a contract with a towing company for the impounding of vehicles, and in that event, the towing company must comply with administrative regulations adopted by the city on the handling and disposing of vehicles. See RCW 46.55.240(4). Arguably, under the council-manager form of government, the city manager would select the towing company or companies with which to contract, and would adopt the administrative regulations  these would seem to be executive functions. But as we have noted, RCW 46.55.240 also gives cities the authority to adopt ordinances governing towing and impoundment  which clearly is a legislative act. In that context, then, depending upon the nature of the proposed ordinance, and to the extent that it might include "making" a contract with Pete's Towing, Councilman Petersen could find himself facing a conflict of interest. As our Supreme Court noted in the City of Seattle case, 100 Wash.2d at 246-47, 668 P.2d 1266, however, nothing would compel him to act on behalf of the city with respect to making any contract involving Pete's Towing, and his remedy would be to disqualify himself.
This case is not like City of Raymond v. Runyon. There, the city was a non-charter code city governed by the commission form of government as provided by Ch. 35.17 RCW. Under that form of government, executive and administrative powers were distributed among three commissioners. One of them served as the mayor, the second served as the financial officer, and the third, Runyan, served as the superintendent of public works. Runyan owned a gravel pit that sold gravel to certain contractors who in turn did business with the city. 93 Wash.App. at 130-31, 967 P.2d 19.
When Runyan realized that by acting on behalf of the city with respect to public works contracts involving the particular contractors with whom he did business at the gravel pit he could be in a conflict of interest situation, he attempted to insulate himself by delegating to his subordinate, the city engineer, his responsibility to sign work contracts with those contractors. Id. Eventually, the city brought an action for declaratory judgment, asking the court to determine whether Runyan had successfully insulated himself, or whether he had violated RCW 42.23.030. Id. at 132, 967 P.2d 19.
The appellate court concluded that notwithstanding his good faith effort to insulate himself from the conflict of interest, Runyan had violated the statute, in that he was directly responsible by law for all contracts that came into his office  whether or not responsibility for any particular contract had been delegated to his subordinate  in that by law, Runyan could not delegate his ultimate authority as the public works commissioner. 93 Wash.App. at 137-38, 967 P.2d 19. Thus, the court held any contracts signed by the commissioner's subordinate after he took public office that financially benefited the commissioner through sales at his quarry to builders who had contracts with the city necessarily violated the terms of RCW 42.23.030. In contrast, contracts made before the commissioner took office were "made through or under the supervision of the previous commissioner" and did not violate the statute. Id. at 138, 967 P.2d 19.
The form of city government and the nature of the public office at issue could be dispositive with respect to whether a given official "makes" a contract, and with respect to whether any such contract is made "through or under the supervision" of the official as provided by the ethics code. Each case must rest on its own facts. In Runyon, the public works commissioner had the ultimate responsibility for public works contracts *296 and could not insulate himself from conflicts of interest by delegating responsibility to an underling. In City of Seattle, a different entity from elected officials had ultimate responsibility for enforcing the campaign financing ordinance, and in the event that an elected official somehow found himself auditing his or her own contract, that official was not compelled to act, and could avoid the conflict of interest by disqualifying himself. This case is nothing like Runyon. It has similarities to the campaign finance case in that an entity other than Petersen individually and the council as a whole has responsibility to supervise police officers and other city staff. Indeed, a statute forbids the city council from supervising police and other staff people.
And to the extent that the city council might consider adopting an ordinance with respect to towing and impoundments that would, if adopted, operate to Petersen's economic benefit to the detriment of others, like in the campaign finance case, Petersen could disqualify himself from participating in the decision of whether to adopt the ordinance.
Finally, to the extent that the trial court's ruling implies that because the city council might have the authority to grant an exclusive contract for towing services to  for example  Pete's Towing, Peterson, by serving on the council, was in violation of RCW 42.32.030 as a matter of law, such was error. The fact that an act would, if performed, violate RCW 42.32.030 does not, by itself, violate the statute. The act would actually have to be performed before there would be a violation.
Nothing in the language of the statute or the case law provides to the contrary. It would be an oddity for an elected official automatically to be placed in violation of the ethics code merely by being sworn into office. Even in Runyon, it is likely that a means could have been found to avoid the conflict of interest. The appellate court suggested one such means in the opinion itself: an ordinance could have been passed modifying the ordinance setting forth the responsibilities of each of the commissioners, to enable them to act for each other when necessary to avoid conflicts of interest. 93 Wash.App. at 137, 967 P.2d 19.
Were no such remedy available, soon it would be difficult to find capable people willing to run for public office, particularly in small towns where virtually every proprietor in the village may at least occasionally do business with the town.
In sum, on this record, Petersen was entitled to judgment as a matter of law and his cross-motion for summary judgment ought to have been granted. Accordingly, we reverse and remand for dismissal of the plaintiffs' lawsuit.
WE CONCUR: SCHINDLER and AGID, JJ.